UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JENNIFER OLSON,** | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. _____ |
| | ) | |
| **TENNESSEE DEPARTMENT OF** | ) | **JURY DEMAND** |
| **TRANSPORTATION and** | ) | |
| **BUTCH ELEY, in his official capacity** | ) | |
| **As Commissioner of the Tennessee** | ) | |
| **Department of Transportation** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S COMPLAINT

COMES now the Plaintiff, by and through counsel, **JENNIFER OLSON** individually and submits this Complaint against Defendant **STATE OF TENNESSEE DEPARTMENT OF TRANSPORTATION and BUTCH ELEY in his official capacity as Commissioner of the Tennessee Department of Transportation** seeking equitable/injunctive relief of reinstatement for discrimination and retaliation pursuant to Title I and V of the American with Disabilities Act of 1990 (the "ADA") 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008 (ADAAA) and relief for discrimination and retaliation pursuant to Section 504 of the Rehabilitation Act of 1973 29 U.S.C. §701 et seq., 29 U.S.C. 794, as amended to correct unlawful employment practices on the basis of disability and failure to provide reasonable accommodations, retaliation, and to provide appropriate relief to Plaintiff who was adversely affected by such practices.

# PARTIES

1. Plaintiff, Jennifer Olson (hereinafter referred to as Plaintiff), is a citizen of the United States who resides in Hamilton County, Tennessee. Plaintiff is and was at all times relevant to this Complaint a citizen of the State of Tennessee and a resident of Hamilton County when a substantial part of the events or omissions giving rise to the present claim occurred within this judicial district.

2. Defendant Tennessee Department of Transportation (hereinafter referred to as Defendant), is a department and/or political subdivision of the State of Tennessee and service of process may be served on the office of Attorney General for the State of Tennessee, Jonathan Skrmetti, at P.O. Box 20207, Nashville, Tennessee, 37202. All claims set forth herein are brought against Defendant who acted under color of state law with respect to all acts or omissions alleged herein. Plaintiff seeks all available damages against Defendant as permitted under Section 504 of the Rehabilitation Act of 1973.

3. Defendant Butch Eley (herein after referred to as Defendant Eley) is the Commissioner for the Tennessee Department of Transportation and service of process may be served on the office of Attorney General for the State of Tennessee, Jonathan Skrmetti, at P.O. Box 20207, Nashville, Tennessee, 37202. Commissioner Butch Eley is sued in his official capacity. All claims set forth herein are brought against Defendant who acted under color of state law with respect to all acts or omissions alleged herein. As to the claim under ADAAA specifically, Plaintiffs seeks equitable and/or injunctive relief limited to that of reinstatement as an employee of Defendant or such other department of the State of Tennessee. Such equitable and/or injunctive relief sought in Plaintiff's ADAAA claim does not violate and/or implicate Defendant's sovereign immunity under the eleventh amendment of the United States Constitution.

4. These Defendants may benefit from immunity under the Eleventh Amendment to the U.S. Constitution from liability for damages under the ADAAA but both Defendants remain subject to claims for injunctive and other available relief under the ADAAA. See *Ex Parte Young*, 209 U.S. 123 (1908).

**JURISDICTION AND VENUE**

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the present claim occurred within this judicial district. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADAAA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e-5(f)(l) and (3), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and is further authorized by Title V of the ADA, 42 U.S.C. § 12203(c), which incorporates by reference the enforcement remedies and procedures available under Section 107(a) of the ADA, 42 U.S.C. § 12117(a). The jurisdiction of this Court is invoked by Plaintiff pursuant to 42 U.S.C. §2000e-5, 42 U.S.C. §2000e-16, 29 U.S.C. §633a(c), and 28 U.S.C. §1331, to secure protection and redress for the deprivation of rights granted by the Rehabilitation Act of 1973, 29 U.S.C. §791.

6. On or about April 10, 2024, Plaintiff filed a charge of discrimination (No. 494-2024-00651) against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination. See attached exhibit EEOC charge.

7. On or about April 22, 2024, Plaintiff received a notice of suit rights from the EEOC, advising her that she had 90 days to file against Defendant under the ADAAA. See attached exhibit Notice of Right to Sue letter.

8. Plaintiff has filed this Complaint within the aforementioned 90 day right to sue period and all conditions precedent to the institution of this lawsuit have been fulfilled.

9. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), which incorporates Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h). Furthermore, Defendant has continuously operated their business in Tennessee and this jurisdiction with at least fifteen (15) employees at various locations for each working day in each of twenty (20) or more calendar weeks in the preceding calendar year under 42 U.S.C. § 1981a(b). Defendant has more than 500 employees.

10. At all relevant times, Defendant has been covered entities under Section 101(2) of the ADAAA, 42 U.S.C. §12111(2).

11. At all times relevant to this action, Defendant knew it constituted a program or Activity receiving federal financial assistance as defined by the Rehabilitation Act at 29 U.S.C. § 794(b). As a recipient of federal funding, Defendant was subject to the requirements of Section 504 of the Rehabilitation Act and the requirements of the ADAAA, including the requirement that it not subject otherwise qualified individuals with disabilities to discrimination on the basis of their disability.

12. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of Section 101(8) of the ADAAA, 42 U.S.C. §12111(8), Section 504 of the Rehabilitation Act, 29 C.F.R. §1630.2., and/or within the meaning of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, which incorporates by reference the standards of the Americans with Disabilities Act, as amended in 2008 ("ADAAA").

13. The unlawful discrimination and retaliation alleged below were committed in Chattanooga, Tennessee which is within the jurisdiction of the United States District Court for the Eastern District of Tennessee, Southern Division.

14. Plaintiff asserts she was discriminated and retaliated against on the basis of her disability. As such, Plaintiff falls within the protected class as a "person" and/or employee as defined in 42 U.S.C. § 2000e(a) who applied for and accepted employment with Defendant. Furthermore, Plaintiff asserts that she was discriminated against and subjected to discrimination and/or disparate treatment "because of her disability" and/or "on the basis of disability."

15. Defendant treated other employees who were not disabled better than Plaintiff or provided accommodations to other disabled employees that were not offered to Plaintiff. Defendant failed to engage in their legal obligation to engage in an interactive process with Plaintiff as an employee. Defendant had actual knowledge about Plaintiff's disability and failed to assist the employee in seeking accommodations. Plaintiff could have been reasonably accommodated but for the Defendant's lack of good faith. In addition to and/or in the alternative, Defendant terminated Plaintiff of the basis of her disability.

16. Defendant retaliated against Plaintiff for merely exercising her rights seeking an accommodation as prescribed and protected under the law and as referenced herein.

17. Plaintiff was otherwise qualified to perform the essential functions of her job with reasonable accommodations by the employer such as respecting and accepting the restrictions prescribed by Plaintiff's physician. The restrictions merely limited the amount of weight Plaintiff could pull, push, or lift and/or upper body movement.

18. The lifting of boxes of shirts involving stooping and bending was not an essential function of Plaintiff's job. Such tasks are marginal functions of Plaintiff's position that can be

assigned to another position without undue burden and/or in the alternative Plaintiff could have received assistance by other employees as Defendant stated.

19. Defendant had actual knowledge of Plaintiff's disability and the physical limitations and/or restrictions arising out and/or resulting from the disability. Defendant has disabilities arising out of injuries sustained from a motor vehicle accident on January 13, 2023. Plaintiff's vehicle was struck by a tractor trailer causing severe injuries.

20. Defendant failed to modify its workplace and/or leave policies as a form of providing a reasonable accommodation. Such accommodations were necessitated by Plaintiff's individual disability related limitations. There was no undue hardship to the Defendant. This further constitutes discrimination and/or disparate treatment in addition thereto.

21. Defendant initially upon its own initiative considered and proposed that Plaintiff perform physical tasks that would have violated these restrictions.

22. Defendant had an affirmative obligation under the ADAAA and precedent to initiate the interactive process with Plaintiff upon actual knowledge of her disability to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

23. Plaintiff was terminated on November 21, 2023 upon a pretext of "inefficiency," "incompetency," and/or "negligence" in the "performance of [her] duties" when in fact it was based on her disability, request for accommodation, and/or failure to engage in an interactive process with Plaintiff. This constitutes an adverse employment action.

24. Plaintiff was terminated on or about November 21, 2023 which was close in time to her request for accommodation. This temporal proximity clearly infers that it was based on her

disability, request for accommodation, and/or failure to engage in an interactive process with Plaintiff.

## STATEMENT OF FACTS

25. The discriminatory conduct alleged herein occurred in connection with Plaintiff's employment with Defendant as a "procurement officer one."

26. Plaintiff was hired on March 31, 2023 and her start date was April 17, 2023.

27. Plaintiff performed her duties while sitting down with occasional physical movement around the warehouse to communicate with other employees, unlock large overhead doors for unloading trucks, and/or observe items on shelves. Plaintiff primarily maintained inventory shelving, garage warehouse products, and safety products.

28. During the interview process, Plaintiff was informed that her duties would include nominal physical tasks involving lifting, stooping, or such other activity.

29. During the interview process, Plaintiff informed Scott Cagle and/or Lonnie Hinkle that she had seven previous surgeries and was not able to stand for long periods of time.

30. Plaintiff's disabilities are complications arising from a motor vehicle accident where her vehicle was struck by a tractor trailer and from seven knee operations prior to this accident. More specifically, Plaintiff has difficulties with walking or standing for long periods of time, lack of mobility, loss of range of motion, difficulty walking stairs, loss of stability in her knee, bending over, and lifting above a certain amount of weight. Plaintiff would suffer pain involving radiating pain from her neck to her arm. Plaintiff demonstrated these symptoms while attempting to perform duties involving lifting of heavy boxes that was not expected at the time of her employment.

31. On or about June 8, 2023, Plaintiff was under the care of her physician who is an orthopedic physician at RiverRun Health in Chattanooga, Tennessee. On this date, Plaintiff was provided a letter prescribing "lifting restrictions of no more than 15-25 lbs to push, pull, or lift until follow up on 6/22/2023."

32. On June 8, 2023, or shortly thereafter, Plaintiff provided this letter to Teresa Herron who was Plaintiff's supervisor.

33. On June 8, 2023, or shortly thereafter and upon information and belief, Teressa Herron provided this letter to Scott Cagle who was the purchasing manager.

34. On June 8, 2023, or shortly thereafter, Teresa Herron and Scott Cagle instructed Plaintiff not to lift any heavy tires or boxes and that she was to ask for help from another employee nearby.

35. On or about June 28, 2023, Teresa Herron and Scott Cagle instructed Plaintiff to appear in the conference room. Plaintiff complied and appeared before Jennifer Greathouse from human resources along with Teresa Herron and Scott Cagle.

36. During this meeting, Jennifer Greathouse stated that she learned that Plaintiff had a handicap placard in her vehicle and she learned this from Teresa Herron. Plaintiff affirmed that she had a handicap placard in her vehicle. Plaintiff was at this time having pain in her left knee requiring such a placard.

37. During this meeting, Jennifer Greathouse asked a number of times if Plaintiff required accommodations for any issues arising from Plaintiff's symptoms with her left knee in context and not pertaining to the restrictions prescribed by Plaintiff's physician referenced above which had been discussed and/or addressed previously. Plaintiff responded that she did not require any accommodations for symptoms with her knee.

38. The following day on or about June 29, 2023, Plaintiff was instructed to appear in the conference room to appear before Teresa Herron and Scott Cagle. Plaintiff was placed on a "coaching plan" that was to provide general guidance about Plaintiff's position of employment. Plaintiff inquired if this was a negative or adverse record in her employment file to which Scott Cagle responded that it was not.

39. On or about July 19, 2023, Plaintiff was treated by her physician and prescribed the same restrictions referenced above and to be reevaluated after having a cervical epidural injection. Plaintiff provided this letter to Teresa Herron who subsequently provided it to Scott Cagle and Jennifer Greathouse.

40. During the end of July 2023, Plaintiff learned about an annual shirt safety order involving twenty-seven counties.

41. On or about August 15, 2023, Plaintiff was treated by her physician and would begin IDD therapy for the next five to six weeks. Plaintiff was prescribed limitations of no lifting, pushing, or pulling over ten pounds and no upper body "exercises" or repetitive motion of the upper body. Plaintiff provided this letter to Teresa Herron who subsequently provided it to Scott Cagle and Jennifer Greathouse.

42. In late August or early September 2023, Plaintiff began working with the main office in Nashville regarding the training of ordering a large order of safety shirts.

43. During the middle of September 2023, Plaintiff began working with the four remote work locations to procure their safety shirt order so the order could be placed at one time.

44. During the beginning of October 2023, Plaintiff began pulling boxes of shirts off of shelves to fulfill orders with available inventory. Plaintiff was limited in her ability to perform

this task as the boxes varied in weight. Plaintiff could perform this task for limited periods of time before onset of symptoms and pain.

45. Plaintiff communicated to Teresa Herron that she would attempt to perform this task as to the best of her ability without violating her restrictions and to be considerate of the medical restrictions.

46. Teresa Herron instructed Plaintiff to have two stock workers assist her in pulling shirt orders.

47. The two stock workers ignored Plaintiff's request for assistance and did not assist her. Plaintiff informed Teresa Herron about this lack of assistance. Teresa Herron failed to instruct the two stock workers to assist Plaintiff.

48. Teressa Herron repeated to Plaintiff to continue to seek their assistance and that Plaintiff should continue to pull the stock shirt orders in violation of her medical restrictions referenced above.

49. On or about October 18, 2023, the general manager Lonnie Hinkle drove Teressa Herron and Plaintiff to the Dunlap, Tennessee location for an employee meet and greet. Lonnie Hinkle during this trip complimented Plaintiff's performance which was overhead by Teressa Herron and employees at this location.

50. On or about October 19, 2023, Plaintiff was treated by her physician and would continue to receive IDD therapy for four weeks and remain on the same restriction as prescribed and referenced in Complaint paragraph 41.

51. On or about October 26, 2023, Plaintiff travelled to Crossville location with Lonnie Hinkle and Scott Cagle for another meet and greet. Lonnie Hinkle complimented Plaintiff's performance.

52. On or about November 2, 2023, Plaintiff sent an email to Scott Cagle, Lonnie Hinkle, and Teressa Herron which resulted in a meeting with these three individuals the next day. During this meeting, each of these three individuals stated that Plaintiff was performing her duties well without complaint. Lonnie Hinkle specifically stated Plaintiff was "doing a great job."

53. On November 20, 2023, Teresa Herron sent an email to Plaintiff by mistake which contained an attachment which was a request or recommendation for probationary dismissal of Plaintiff's employment. The letter refers to conversations with Plaintiff about her performance that Plaintiff adamantly denies. The letter further states "she was instructed after this meeting to pull shirts orders from the districts and place an order for additional inventory. She has failed to complete the task after being given three separate deadlines."

54. Plaintiff was under medical restrictions and complying with these instructions referenced in Complaint paragraph 50 would have violated such restrictions.

55. On November 20, 2023, immediately upon receipt of the email referenced above, Plaintiff requested a meeting with Jennifer Greathouse in human resources.

56. The following day, on November 21, 2023, Jennifer Greathouse called Plaintiff and stated that Plaintiff's call must be about the email sent to Plaintiff by Teresa Herron in error. Plaintiff referenced the issue of the shirt order in the letter and reminded her about the medical restrictions.

57. Immediately after this call, on November 21, 2023, Plaintiff emailed the medical restrictions to Jennifer Greathouse.

58. Later on this same date, November 21, 2023, Plaintiff received a letter of separation of employment from Scott Cagle.

59. Defendant did not engage in any interactive process with Plaintiff to identify her disability, determine feasibility of the accommodation request, and/or any potential for undue burden or hardship.

60. Defendant did not request any medical records or seek any verification of her disability.

## COUNT I

## DISCRIMINATION IN VIOLATION OF THE ADA AND FAILURE TO PROVIDE A REASONABLE ACCOMODATION IN VIOLTION OF THE ADA

61. Plaintiff restates and incorporates herein all of the paragraphs and allegations above and below.

62. Pursuant to the ADAAA, an individual is considered to have a disability if she has a physical impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

63. Since atleast June 8, 2023 Defendant has engaged in the following unlawful employment practices at its Chattanooga, Tennessee location in violation Title I of the ADAAA, 42 U.S.C. §12111(a) and (b).

    a. Discriminating and/or terminating Plaintiff on the basis of and/or arising out of her actual and/or perceived disability.

    b. Failing to initiate and engage in the interactive process to identify the precise limitations resulting from Plaintiff's disability and potential reasonable accommodations that could overcome those limitations.

    c. Failing to provide reasonable accommodations to Plaintiff.

    d. Discharging Plaintiff, due to the need to accommodate Plaintiff's disability.

64. Plaintiff is a qualified individual with a disability and meets the requirements and can perform the essential functions of the original position of employment and schedule with or without reasonable accommodation.

65. Defendant discriminated against Plaintiff by automatically terminating her pursuant to an apparent policy or immediate directive with a disparate impact on individuals with an actual or perceived disability.

66. Plaintiff asserts that she was discriminated against and subjected to disparate treatment "because of her disability" and/or "on the basis of disability."

67. Defendant treated other employees who were not disabled better than Plaintiff.

68. Plaintiff could have been reasonably accommodated but for the Defendant's lack of good faith.

69. Defendant terminated Plaintiff on the basis of her disability.

70. Plaintiff was otherwise qualified to perform the essential functions of her job with reasonable accommodation by the Defendant.

71. Defendant had actual knowledge of Plaintiff's disability being as identified above and the physical limitations and/or restrictions arising out/or of or resulting from the disability as referenced herein.

72. Defendant failed to allow Plaintiff to continue her duties and/or search for and/or consider a vacant, equivalent position, and/or a lower-level position to which the Plaintiff could be reassigned and was qualified for as a form of reasonable accommodation.

73. Plaintiff was terminated on a false pretext as averred herein and other alleged trivialities. This constitutes an adverse employment action and/or in the alternative an unlawful employment practice under the ADAAA.

74. The basis for termination proffered by Defendant are false and serve as a pretext for termination therefore deserving no credence as a legitimate non-discriminatory act.

75. The temporal proximity arising out of the facts averred above provide an adverse inference of discriminatory conduct by Defendant.

76. The effect of the unlawful employment practices complained of herein has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her disability. Such discrimination and/or retaliation practices were performed intentionally with malice and/or reckless indifference to the federally protected rights of Plaintiff.

77. As a direct and proximate result of Defendant's actions as set forth above, Plaintiff was terminated from employment. Plaintiff seeks reinstatement to original position and/or another position with the State of Tennessee as equitable or injunctive relief.

78. Plaintiff seeks attorneys fees.

### Count II
### Violation of ADAAA- Retaliation

79. Plaintiff restates and incorporates herein all of the paragraphs and allegations above and below.

80. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights without fear of reprisal or penalty from an employer.

81. Plaintiff engaged in protected activity under the ADAAA when she requested an accommodation, *e.g.*, being able to work within her medical restrictions and to receive assistance. Such actions by the Plaintiff are statutorily protected activities under ADAAA.

82. In violation of the ADAAA, Defendant retaliated against Plaintiff by refusing to engage in the interactive process and then terminating her employment.

83. As a direct and proximate result of Defendant's actions as set forth above, Plaintiff was terminated from employment. Plaintiff seeks reinstatement to original position and/or another position with the State of Tennessee as equitable or injunctive relief.

84. Plaintiff seeks attorneys fees.

## COUNT III

## VIOLATION OF THE SECTION 504 OF REHABILITATION ACT OF 1973

85. Plaintiff restates and incorporates herein all of the paragraphs and allegations above and below.

86. The Rehabilitation Act of 1973, 29 U.S.C. § 794 (hereinafter "the Rehabilitation Act"), which applies to government agencies, otherwise basically incorporates the standards of the Americans with Disability Act ("ADAAA "). See 29 C.F.R. § 1614.203(b) (2008) (expressly adopting the ADAAA regulations as the standard to be applied to discrimination claims asserted under the Rehabilitation Act).

87. Pursuant to the Rehabilitation Act consistent with the ADAAA, an individual is considered to have a disability if she has a physical impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

88. Since atleast June 8, 2023 Defendant has engaged in the following unlawful employment practices at its Chattanooga, Tennessee location in violation of the Rehabilitation Act.

   a. Discriminating and/or terminating Plaintiff on the basis of and/or arising out of her actual and/or perceived disability.

> b. Failing to initiate and engage in the interactive process to identify the precise limitations resulting from Plaintiff's disability and potential reasonable accommodations that could overcome those limitations.
>
> c. Failing to provide reasonable accommodations to Plaintiff.
>
> d. Discharging Plaintiff, due to the need to accommodate Plaintiff's disability.

89. Plaintiff is a qualified individual with a disability and meets the requirements and can perform the essential functions of the original position of employment and schedule with or without reasonable accommodation.

90. Defendant discriminated against Plaintiff by automatically terminating her pursuant to an apparent policy or immediate directive with a disparate impact on individuals with an actual or perceived disability.

91. Plaintiff asserts that she was discriminated against and subjected to disparate treatment "because of her disability" and/or "on the basis of disability."

92. Defendant treated other employees who were not disabled better than Plaintiff.

93. Plaintiff could have been reasonably accommodated but for the Defendant's lack of good faith.

94. Defendant terminated Plaintiff on the basis of her disability.

95. Plaintiff was otherwise qualified to perform the essential functions of her job with reasonable accommodation by the Defendant.

96. Defendant had actual knowledge of Plaintiff's disability being as identified above and the physical limitations and/or restrictions arising out/or of or resulting from the disability as referenced herein.

16
Case 1:24-cv-00237-TRM-CHS    Document 1    Filed 07/16/24    Page 16 of 19    PageID #: 16

97. Defendant failed to allow Plaintiff to continue her duties and/or search for and/or consider a vacant, equivalent position, and/or a lower-level position to which the Plaintiff could be reassigned and was qualified for as a form of reasonable accommodation.

98. Plaintiff was terminated on a false pretext as averred herein and other alleged trivialities. This constitutes an adverse employment action and/or in the alternative an unlawful employment practice under the Rehabilitation Act.

99. The basis for termination proffered by Defendant are false and serve as a pretext for termination therefore deserving no credence as a legitimate non-discriminatory act.

100. The temporal proximity arising out of the facts averred above provide an adverse inference of discriminatory conduct by Defendant.

101. The effect of the unlawful employment practices complained of herein has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her disability. Such discrimination and/or retaliation practices were performed intentionally with malice and/or reckless indifference to the federally protected rights of Plaintiff.

102. As a direct and proximate result of Defendant's actions as set forth above, Plaintiff has suffered:

    a. Loss of back wages;

    b. Loss of insurance benefits;

    c. Loss of other fringe benefits;

    d. Loss of Future earnings and front-pay;

    e. Punitive damages; and

f. Loss of time and money in endeavoring to protect her from Defendant's unlawful discrimination, including costs and reasonable attorneys' fee of this action.

103. Plaintiff has suffered damages as a result of Defendant's discriminatory actions in excess of $300,000.00.

**WHEREFORE, Plaintiff prays for the following relief against Defendant:**

1. Declaration that the Defendants violated Plaintiff's rights with regard to disability discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and/or ADAAA and the Rehabilitation Act of 1973 29 U.S.C. § 794 as referenced herein.

2. Reinstatement as injunctive relief;

3. Economic and/or Compensatory damages with prejudgment and post judgment interest to Plaintiff for all salary, back pay, front pay, and benefits lost due to Defendants' unlawful actions in an amount not less than $300,000.00 or to be determined;

4. Punitive damages to Plaintiff in an amount to be determined;

5. Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses;

6. Such other and further relief as the Court deems just and proper; and

7. Jury trial with Cause to be tried by a jury of peers (12).

Respectfully submitted,

/s/Roland Mumford

---

Roland Mumford BPR 026495
Law Offices of Roland Mumford & Assoc.
242 West Main Street, No. 223
Hendersonville, TN 37075
Phone: 615.348.0070
Fax: 614.246.4110
Email: roland@mumfordlaw.net

Attorney for Plaintiff